# IN THE COURT OF APPEALS OF IOWA

No. 26-0419
Filed May 27, 2026

**In the Interest of R.S.-M., Minor Child,**

**E.M., Mother,**
Appellant.

Appeal from the Iowa District Court for Audubon County,
The Honorable Ashley West-Joons, Judge.

**AFFIRMED**

Jonathan James Mailander, Mailander Law, Atlantic, attorney for appellant
mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

William T. Early, Harlan, attorney and guardian ad litem
for minor child.

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Chicchelly, J.

**CHICCHELLY, Judge.**

The mother[1] appeals the termination of her parental rights to R.S.-M., born in 2022. On appeal, the mother argues termination is not in the child's best interests and that a permissive exception should be applied. Upon our review, we affirm the termination of the mother's parental rights.

## BACKGROUND FACTS AND PROCEEDINGS

This family came to the attention of the Department of Health and Human Services (HHS) in October 2023. HHS received a referral alleging the mother and her paramour were using methamphetamine while caring for the children.[2] A safety plan was put in place where the child was placed with the paramour's mother. Both the mother and paramour tested positive for methamphetamine.

The next month, the State filed a petition alleging the children to be children in need of assistance (CINA). The petition related to R.S.-M. alleged grounds under Iowa Code sections 232.96A(3)(b) and (16)(d) (2023). In December 2023, the juvenile court adjudicated the children to be CINA. R.S.-M. was placed in the care of HHS. The juvenile court ordered the mother to engage in substance use and mental health assessments.

By the time of the January 2024 disposition hearing, the mother had completed the substance use evaluation but not the mental health assessment. The substance use evaluation recommended intensive

---

[1] The father's parental rights were also terminated, but he did not appeal.

[2] R.S.-M.'s sibling is not the subject of this appeal but references to children refer to both R.S.-M. and the sibling.

outpatient treatment. The mother and her paramour admitted to use of marijuana but not methamphetamine. Seemingly, progress was being made.

That progress unraveled in March 2024, however. HHS was concerned that the mother's parents—whom she was living with—were using drugs in their home. Alternative housing was sought by HHS for the mother. And the mother attended inpatient substance use treatment during this time. But she was arrested for felony controlled-substance violations. Both the mother and her paramour tested negative for controlled substances—though HHS expressed concern that they used synthetic urine for purposes of the testing.

In August 2024, the mother seemed to be making progress again. She was employed full-time and had registered for some college courses. She attended Narcotics Anonymous and substance use treatment. The mother and her paramour found stable housing. Having had several negative drug tests, the mother progressed to semi-supervised visitation with R.S.-M.. And the mother received probation for her pending charges.

By October 2024, the mother had progressed to unsupervised visits with the child. And the mother continued to attend some substance use treatment as well as Narcotics Anonymous. But the mother refused to follow the recommendation of her substance use evaluation for intensive outpatient treatment. Of some concern to the juvenile court was that the mother was not compliant with her medication for bipolar disorder. Additionally, the mother was once again arrested on new criminal charges, and her previous probation was revoked.

In December 2024, the mother was drug tested during a probation visit and tested positive for the use of THC. Despite that, the mother was allowed

a weekend visit with the child. The mother also told HHS that her parents no longer used controlled substances and requested that the child be able to see her grandparents. But HHS later learned that the grandparents were continuing to use methamphetamine and alcohol in the presence of the child. HHS informed the mother not to allow the child to have contact with their grandparents. Despite that directive, the mother continued to allow the children to see their grandparents again after these warnings.

The mother then took the children on multiple trips to Omaha to visit a friend. During these trips, the children were placed in a room with their iPads while the adults used vapes and watched scary movies. One of these trips led to R.S.-M. being left alone in a bathroom and cutting herself in the face with a razor. Subsequently in March 2024, both the mother and her paramour refused drug screenings. The mother's unsupervised visitations were then revoked and returned to supervised visits.

By the time of the August 2025 permanency hearing, progress had completely stalled. The mother and her paramour were in danger of being evicted because their employment was seasonal at best. Both refused drug screens in July 2025. Given the lapse in progress, the juvenile court changed the child's permanency goal and ordered the State to file a termination of parental rights (TPR) petition.

The State filed a petition in August 2025 alleging grounds for TPR under Iowa Code section 232.116(1)(h) (2025) as to the mother's parental rights and under sections 232.116 (1)(b) and (1)(h) relating to the unknown father of the child. The State then filed an amended petition alleging additional TPR grounds under section 232.116(1)(h) as to the mother's paramour. After paternity testing revealed the paramour was not the child's father, the State moved to dismiss the TPR petition against him. Even after

4

the State filed the TPR petition, the mother again tested positive for methamphetamine in both October and November. The matter proceeded to a TPR hearing in January 2026. After the hearing, the juvenile court granted the State's TPR petition.[3] The mother now appeals.

## STANDARD OF REVIEW

We review termination-of-parental-rights proceedings de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). While not binding on us, we give weight to the juvenile court's fact findings, "particularly with respect to credibility determinations." *Id.*

## DISCUSSION

Our review follows a three-step analysis in reviewing the termination of a parent's rights. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, we consider whether statutory grounds for termination of the parent's rights exist under Iowa Code section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the children's best interests. *Id.* (following Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.* But when the parent does not raise a claim relating to any of the three steps, we need not address that step and instead limit our review to the specific claims presented. *See id.* at 40 (recognizing we need not consider a step the parent does not challenge).

---

[3] The juvenile court's order states the State proved the alleged grounds under Iowa Code section 232.116(1)(h) as to both the mother and the unknown father, but the order also states the unknown father's parental rights were terminated under section 232.116(1)(b). Because the father does not appeal and is not a party to this appeal, that issue is not before us.

## I.  Best Interests

We begin by considering whether termination was in the child's best interests.  To determine whether termination of parental rights is in the best interests of a child, we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).  "We also look to the child's long-range as well as immediate interests. . . . [W]e look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future."  *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (cleaned up).

Here, the mother had continued mental health and substance use concerns.  The substance use concerns, including the use of methamphetamine even after the TPR petition was filed, and the dangerous positions that the mother put the child in, such as being left unsupervised in Omaha, weigh heavily towards finding termination is in R.S.-M.'s best interests.  *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children."); *In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa Ct. App. June 7, 2017) ("Methamphetamine is a scourge.").

Additionally, the mother's inconsistent substance use treatment and total refusal to participate in mental health treatment weigh in favor of termination.  Because the mother's mental-health concerns remain unaddressed, "[w]e do not gamble with the children's future by asking them to continuously wait for a stable biological parent, particularly at such tender ages."  *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (cleaned up).

Accordingly, we find termination of the mother's parental rights was in R.S.-M.'s best interest.

## II.  Permissive Exception

Next, the mother argues the juvenile court erred by not applying a permissive exception to termination.  She argues that the permissive exception in Iowa Code section 232.116(3)(c) applies because there is a close parent-child relationship between the mother and child.  The parent claiming the exception has the burden to prove it should apply.  *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).  Our review of the record shows the child has been removed from the mother's care for two years.  While some progress was made during visits, it was not conclusive to show that there was a sufficiently close bond.  And when considered in the context of the harm the child suffered during visits with the mother, including being cut with a razor and being exposed to controlled substances, we are skeptical that the record demonstrates a close bond between the mother and child.

And in applying the exception in section 232.116(3)(c), the "consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs."  *See D.W.*, 791 N.W.2d at 709.  We conclude that the child should not be denied permanency after more than two years out of the mother's care.  The child's need for permanency "overrides any harm they will experience as a result of the relationship with their parents being severed."  *In re M.R.*, No. 25-1414, 2025 WL 3171421, at *3 (Iowa Ct. App. Nov. 13, 2025).  So, we do not find the mother has met her burden to show the permissive exception should be applied.

## CONCLUSION

Because we find termination is in the child's best interests and the mother has not established the permissive exception in Iowa Code section 232.116(3)(c) applies, we affirm the termination of the mother's parental rights.

**AFFIRMED.**